UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Juan Gabriel Hermosillo-Barajas,

     Petitioner

v.

John Mattos, et al.,

     Respondents

Case No.: 2:26-cv-00274-JAD-DJA

**Order Granting Petition for Writ of Habeas Corpus and Directing Petitioner's Release**

[ECF No. 12]

Petitioner Juan Gabriel Hermosillo-Barajas is a Mexican citizen who entered the United States without inspection in 2001 and was ordered removed in December 2024. He has been in Immigration and Customs Enforcement (ICE) custody at the Nevada Southern Detention Center since his removal order was issued. Hermosillo-Barajas was initially granted cancellation of removal in June 2025, but the Department of Homeland Security appealed, and the Board of Immigration Appeals (BIA) reversed the cancellation decision. Hermosillo-Barajas's Ninth Circuit appeal of the BIA's decision remains pending.[1] During his more than 16-month detention, he received one bond hearing (which was unsuccessful) in January 2025.

In February 2026, Hermosillo-Barajas filed a petition for a writ of habeas corpus under 8 U.S.C. § 2241, contending that his prolonged detention violates his due-process rights.[2] I appointed him counsel, and he filed an amended petition expounding on the legal bases for his claims and requesting an additional bond hearing, with the burden on the government to show that he is a flight risk or a danger to the community in order to justify keeping him in custody. The respondents contend that Hermosillo-Barajas is an "applicant for admission" under this

---

[1] *Hermosillo-Barajas v. Blanche*, Case No. 25-8047 (9th Cir.).

[2] ECF No. 1. I find this matter capable of resolution without a hearing.

country's immigration statutes and thus can be detained without any bond hearing under 8 U.S.C. § 1225(b)(2).  It alternatively contends that Hermosillo-Barajas is detained without bond under 8 U.S.C. § 1226(c), which permits mandatory detention for noncitizens with certain criminal histories.  And finally, the government contends that Hermosillo-Barajas received the process he was due when he got a bond hearing in January 2025 and because he was able to appeal his removal order.  Hermosillo replies that his detention is not and cannot be authorized by §§ 1225(b)(2) or 1226(c), leaving only § 1226(a)—the statutory authority that permits bond— as a valid basis for his detention.  And he contends that he has not been given the process due to a noncitizen held in civil detention for more than a year after his last bond hearing.

I grant Hermosillo-Barajos's petition.  I join the hundreds of district courts and the Second Circuit in rejecting the government's § 1225(b)(2) arguments.  Hermosillo-Barajas has been present in this country for decades and is not seeking admission, so the mandatory detention authorized by that statute does not apply to him.  And though Hermosillo-Barajas was convicted of a crime that would fall under Congress's amendments to § 1226(c) under the 2025 Laken Riley Act, the provisions of that Act were not made retroactive, so they don't apply to his 2024 detention.  I am left with § 1226(a)—the statute that the immigration judge clearly also believed applied in January 2025 when he denied bond based on the reasons that generally apply to § 1226(a) detainees.

I find that the government's insistence that § 1225(b)(2) applies to Hermosillo-Barajas has effectively foreclosed any available process that would be due to him if he were detained under § 1226(a).  Given that he has been unable to rely on those protections for the majority of detention, I find that the appropriate remedy is to order Hermosillo-Barajas's release.

**Background**

Petitioner Juan Gabriel Hermosillo-Barajas is a Mexican citizen who came to the United States in 2001.  He was convicted of a petty-theft misdemeanor in California on March 10, 2024, and served a 15-day prison sentence for that crime.[3]  Later that year, Hermosillo-Barajas was arrested in Salt Lake City, Utah, and was convicted of a threat-of-violence misdemeanor and an assault misdemeanor between June and December 2024.[4]  ICE took him into federal custody on December 22, 2024, and initiated removal proceedings against him.[5]  Hermosillo-Barajas asked for a custody redetermination hearing in the hopes of being released on bond, but the immigration judge denied that request, finding that he had "not demonstrated that he is not a danger to the community based on the recent and seriousness of two separate violent criminal convictions."[6]

In June 2025, an immigration judge granted Hermosillo-Barajas cancellation of removal under 8 U.S.C. § 1229b(b)(1), finding that removal would result in exceptional and extremely unusual hardship for his two sons, who are both U.S. citizens and would stay in the U.S. if Hermosillo-Barajas were removed.[7]  The Department of Homeland Security (DHS) appealed that decision to the Board of Immigration Appeals (BIA) and the BIA reversed, finding that the facts didn't support a finding of exceptional and extremely unusual hardship, and it ordered Hermosillo-Barajas removed to Mexico.[8]  Hermosillo-Barajas appealed that determination to the

---

[3] ECF No. 14-2 at 3.

[4] *Id.*

[5] *Id.*

[6] ECF No. 14-3 at 7.

[7] ECF No. 16-4 (order granting cancellation of removal).

[8] ECF No. 14-4.

Ninth Circuit, and that appeal remains pending.[9] Hermosillo-Barajas has been detained at the Nevada Southern Detention Center throughout his removal proceedings and remains there to this day.

In February 2026, Hermosillo-Barajas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking another bond hearing at which the government must prove by clear and convincing evidence that he presents a risk of flight or danger to the community.[10] I appointed counsel for Hermosillo-Barajas, and later that month, he filed a counseled amended petition alleging that his prolonged detention without the opportunity for release on bond violates his due-process rights. The government responds with the recently oft-repeated argument that the detention is governed by 8 U.S.C. § 1255(b)(2)(A), a statute that applies to "applicants for admission," and detainees held under that authority are not entitled to a bond hearing. It also argues that Hermosillo-Barajas is alternatively detained under § 1226(c), which permits mandatory detention for noncitizens who were convicted of crimes like theft.

## Discussion

**A.**  **The government is not authorized to detain Hermosillo-Barajas under § 1226(c) because the Laken Riley Act does not apply retroactively.**

8 U.S.C. § 1226(c) requires mandatory detention for noncitizens who have committed specifies crimes.[11] On January 29, 2025, the President signed into law the Laken Riley Act (LRA), which expands that list of crimes to include convictions for "burglary, theft, shoplifting, or assault of a law enforcement officer . . . or any crime that results in the death or serious bodily

---

[9] *See Hermosillo-Barajas v. Bondi*, Case No. 25-8047 (9th Cir.).

[10] ECF No. 1-1.

[11] 8 U.S.C. § 1226(c).

4

injury to another person[.][12]  The government argues that, because Hermosillo-Barajas was convicted of petty theft in March 2024, he is subject to mandatory detention under that provision. Hermosillo-Barajas responds that the LRA does not apply retroactively, so it cannot sweep in convictions that predate its enactment.

To determine whether a statute has retroactive effect, the court starts with the presumption against retroactive legislation.[13]  The Supreme Court's decision in *Landgraf v. USI Film Products* "controls the analysis of retroactivity for federal civil legislation" and provides a "three-step framework for deciding whether enactment . . . applies retroactively."[14]  First, the court must determine whether Congress "explicitly included a retroactive effect date" and, if it does, the court must "honor" it.[15]  If not, the court asks whether application of the statute "would have retroactive effect."[16]  If it would, then courts "apply a presumption against statutory retroactivity" unless there is clear congressional intent demonstrating that the law was meant to be applied retroactively.[17]

The LRA does not have a retroactive-effect date, so I consider whether the law would have retroactive effect under *Landgraf*.[18]  It would.  The law imposes the specter of mandatory immigration detention for noncitizens who are convicted of theft crimes, which was not the case

---

[12] 8 U.S.C. § 1226(c)(1)(E)(ii).

[13] *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (noting that "the presumption against retroactive legislation is deeply rooted in our jurisprudence[] and embodies a legal doctrine centuries older than our Republic").

[14] *Ratha v. Rubicon Res., LLC*, 168 F.4th 541, 549 (9th Cir. 2026)

[15] *Id.*

[16] *Id.*

[17] *Id.*; *see also Rivers v. Roadways Express, Inc.*, 511 U.S. 298, 304–09 (1994).

[18] *See* Laken Riley Act, Pub. L. No. 119-1 § 2, 139 Stat. 3 (2025).

5

before the LRA was passed. Because the law would impose new immigration consequences on Hermosillo-Barajas that he did not have notice of when he was convicted of theft, the law would have retroactive effect. I therefore apply the presumption against retroactivity.

I also conclude that Congress did not evince its clear intent to overcome that presumption. The LRA applies to a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements" of various theft offenses.[19] The use of present tense suggests that Congress did not intend for the LRA to apply to prior arrests or convictions.[20] Had Congress intended to extend the LRA to past convictions, it could have written the statute to clearly do so by "expressly direct[ing] retroactive application," as it has done in other provisions of the Immigration and Nationality Act.[21]

The LRA also requires the government to detain the noncitizen "when the citizen is released."[22] This language mandates that a noncitizen be arrested by immigration officials immediately after his release from custody on his theft crime. To apply the LRA retroactively would stretch "when the alien is released" to cover years between release and rearrest, which is contrary to the language's plain meaning.

So I conclude that the LRA cannot be applied retroactively. Because Hermosillo-Barajas's theft conviction was entered approximately ten months before the LRA was enacted, it

---

[19] 8 U.S.C. § 1226(c)(1)(E)(ii).

[20] *United States v. Wilson*, 503 U.S. 329, 222 (1992) ("Congress's use of a verb tense is significant in construing statutes."); *Carr v. United States*, 560 U.S. 438, 448 (2010) (reasoning that "the present tense generally does not include the past").

[21] *See, e.g.*, 8 U.S.C. § 1101(a)(43) (defining "aggravated felony" to include "conviction[s] . . . entered before, on, or after" the statute's enactment date); *I.N.S. v. St. Cyr*, 533 U.S. 289, 319 n.43 (2001) (listing other examples in which Congress clearly applied INA provisions retroactively).

[22] 8 U.S.C. § 1226(c)(1).

cannot serve as the basis for detention under § 1226(c).  The government thus lacked statutory authority to mandatorily detain Hermosillo-Barajas under that provision.

**B.**     **Section 1225(b)(2)(A) does not apply to Hermosillo-Barajas because the government's interpretation of that provision is incorrect.**

The government next contends that Hermosillo-Barajas is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  That provision requires mandatory detention "in the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."[23]  The government contends that, though Hermosillo-Barajas has been residing in the United States for about 25 years, he remains an "applicant for admission" and is seeking admission, and thus falls under § 1225(b)(2)(A)'s mandatory-detention scheme.  In its view, § 1226(a), which grants noncitizen detainees the opportunity for release on bond, applies only to noncitizens who entered the United States legally but stay in the country illegally (i.e., arriving on a time-limited student visa, but staying past the visa's expiration).

This interpretation of the INA's pre-removal detention provisions, which the government began following in July 2025, upends decades of well-settled practice and has been the subject of hundreds of court cases and a circuit split.[24]  Before the switch, the government applied § 1226(a) to noncitizens already present within the United States who are inadmissible, while § 1225(b)(2)(A) was reserved for citizens seeking admission after lawfully entering the country

---

[23] 8 U.S.C. § 1225(b)(2)(A).

[24] *Compare Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) *with Cunha v. Freden*, __ F.4th __, 2026 WL 1146044 (2d. Cir. 2026). The Ninth Circuit has at least one pending appeal confronting this issue.  *See Rodriquez-Vasquez v. Bostock*, Case No. 25-6842 (9th Cir.).

at a border after inspection and authorization. The government contends that its new interpretation is more consistent with the statute's text.

Considering the text, structure, and history of these provisions, I conclude that the government's new interpretation is incorrect. In the interest of judicial economy,[25] I incorporate by reference and adopt U.S. District Judge Richard F. Boulware II's statutory analysis of the INA in *Jacobo Ramirez v. Mullin*,[26] finding that § 1225(b)(2)(A) cannot be read to encompass noncitizens who are already present in the United States, as opposed to those detained at its borders. And to the extent that the government relies on the Fifth and Eighth Circuits' opinions finding that the government's interpretations are correct, I incorporate by reference and adopt the conflicting findings the Second Circuit reached in *Cunha v. Freden*.[27] After careful review and consideration, I conclude that the reasoning in those opinions faithfully analyzes the statute and comes to the only plausible interpretation: § 1225(b)(2)(A) applies at the borders to noncitizens who seek admission to this country, and § 1226(a) applies to those noncitizens already present in the United States who are determined to be inadmissible and placed in removal proceedings. So, because it is undisputed that Hermosillo-Barajas has been residing in the United States since 2001, § 1226(a) governs his detention.

---

[25] *See, e.g.*, *Hernandez-Luna v. Noem*, 2025 WL 3102039, at \*5 (D. Nev. Nov. 6, 2025) (noting that "much ink has been spilled on this [issue] in hundreds of orders issued in the last couple of months" and collecting cases).

[26] *Jacobo Ramirez v. Mullin*, 2026 WL 879799 (D. Nev. Mar. 30, 2026). Specifically, I incorporate sections IV and VI.C.1, 2, and 4s' findings and conclusions concerning the text and structure of §§ 1225 and 1226, the legislative history and purpose of the INA, and the prior agency practice.

[27] *Cunha*, 2026 WL 1146044 (2d. Cir. 2026).

**C.      Hermosillo-Barajas's detention is governed by § 1226(a) and entitles him to certain process that he has not received.**

   *1.      Noncitizens detained under § 1226(a) are entitled to various procedures related to seeking release on bond.*

8 U.S.C. § 1226(a) governs detention "pending a decision on whether the [noncitizen] is to be removed from the United States." The statute permits a noncitizen held under this authority to be detained or released on bond and with conditions.[28] When a person is arrested under § 1226(a), an ICE officer makes the initial custody determination and may order release only if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."[29]

The noncitizen may then "request a bond hearing before an [immigration judge (IJ)] at any time before a removal order becomes final" to contest the initial custody determination.[30] At that hearing, the IJ considers "various factors . . . including the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country" to determine whether the noncitizen should remain detained or if release (on bond or with other conditions) is appropriate.[31] The noncitizen may be represented by counsel and can submit evidence in his favor.[32] He may also appeal the decision to the Board of Immigration Appeals (BIA).[33] A noncitizen detained under § 1226(a) may also request a

---

[28] 8 U.S.C. § 1226(a)(1)–(2).

[29] 8 C.F.R. § 236.1(c)(8).

[30] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

[31] *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); 8 U.S.C. § 1226(a)(2)).

[32] *Id.* (citing 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016)).

[33] *Id.* (citing 8 C.F.R. § 236.1(d)(1)).

redetermination hearing if he experiences a material change in circumstances.[34]  He can appeal the IJ's decision of that redetermination hearing to the BIA too.

### 2. Noncitizen detainees are also entitled to due process of law in immigration proceedings.

"The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."[35]  But the amount of process due to noncitizens "must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens."[36]  The Ninth Circuit applies the three-factor test outlined in the Supreme Court case *Mathews v. Eldridge*[37] to determine whether a noncitizen's procedural due-process rights have been violated in immigration-detention situations like this one.[38]  Under *Mathews*, courts must consider "*first*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[39]

---

[34] 8 C.F.R. § 1003.19(e).

[35] *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

[36] *Id.* at 1206.

[37] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[38] *Rodriguez Diaz*, 53 F.4th at 1207 (assuming without deciding that *Mathews* applies to a noncitizen's challenge to detention under § 1226(a)).

[39] *Mathews*, 424 U.S. at 335 (cleaned up).

### 3. *Hermosillo-Barajas's 16-month detention without due process warrants his release.*

Hermosillo-Barajas contends that he was not given adequate due-process protections to challenge his detention.  He alleges that he was not given an initial custody determination, but he acknowledges that he had a bond *redetermination* hearing about a month into his detention.  At that hearing, the IJ denied bond because Hermosillo-Barajas "had not demonstrated that he is not a danger to the community based on the recency and seriousness of two separate violent criminal convictions."[40]  He has not received any further bond hearings.  The government takes the position that Hermosillo-Barajas "was given a constitutionally adequate bond hearing and is not entitled to release or further custody redetermination hearings."[41]

"An individual's private interest in freedom from prolonged detention is unquestionably substantial."[42]  Hermosillo-Barajas has been detained for almost 17 months.  Under Ninth Circuit precedent, that's considered "prolonged."[43]  But when evaluating Hermosillo-Barajas's interests under the first prong, the court "cannot simply count his months of detention and leave it at that."[44]  It must also consider "the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order."[45]  Here, though Hermosillo-Barajas received one bond-redetermination hearing, the government's position that Hermosillo-Barajas is subject to

---

[40] ECF No. 16-1.

[41] ECF No. 14 at 10.

[42] *Rodriguez Diaz*, 53 F.4th at 1207.

[43] *Id.* (finding 14 months of detention to be prolonged).

[44] *Id.* at 1208.

[45] *Id.*

11

mandatory detention under § 1225(b)(2)(A) forecloses his ability to seeking additional custody determination hearings that are otherwise available for § 1226(a) detainees.  And the length of Hermosillo-Barajas's detention is due in large part to the *government's* choice to appeal the IJ's cancellation of removal.  While I acknowledge that his detention is now prolonged because he has appealed the BIA's decision to the Ninth Circuit, under normal circumstances he would have been given the opportunity to contest his bond determination—an option that he has been deprived of thus far.  So on balance, I find that the deprivation of Hermosillo-Barajas's liberty interest weighs in favor of relief.

I also conclude that there is a substantial risk of erroneous deprivation of Hermosillo-Barajas's interest under the government's reliance on § 1225(b)(2)(A)'s mandatory detention scheme.  Hermosillo-Barajas has been detained for a year while the government's appeal of his removal proceedings was pending, and throughout that time he had no opportunity to contest his bond determination or seek reconsideration based on changed circumstances.  I find that Hermosillo-Barajas suffers a severe risk of erroneous deprivation of his liberty interest absent these procedures, which also weighs in favor of relief.

It is undisputed that the government has a strong interest in enforcing immigration law, protecting the public from "dangerous criminal" noncitizens, and securing the removal of noncitizens who are subject to final orders of removal.[46]  But in light of the fact that the government hasn't followed its own bond-redetermination procedures, I cannot conclude that the government's interests outweigh the petitioner's in this case.  The parties' interests are not mutually exclusive: the government's interest in enforcing immigration law and protecting the public from dangerous noncitizens can still be served while offering due-process protections to

---

[46] *Id.* at 1208.

the noncitizens in its custody.  Under these circumstances, I find that release is the appropriate remedy for the continuing due-process violations Hermosillo-Barajas is suffering.[47]

### Conclusion

IT IS THEREFORE ORDERED that petitioner Juan Gabriel Hermosillo-Barajas's amended petition for a writ of habeas corpus **[ECF No. 12] is GRANTED**.  **Petitioner Juan Gabriel Hermosillo-Barajas must be released from detention within three days of this order**.

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Hermosillo-Barajas's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Hermosillo-Barajas's release was effectuated.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to SEND a copy of this order to the Warden of the Nevada Southern Detention Center in Pahrump, Nevada and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
May 18, 2026

---

[47] *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (noting that release is the "typical remedy" for "unlawful executive detention").